# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PENNY S. RICE, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Case No. SAG-18-1980 |
| SALONCENTRIC INC., | * |
| Defendant. | * |

## MEMORANDUM OPINION

Plaintiffs Penny S. Rice and Russell Rice filed an Amended Complaint against Defendant SalonCentric, Inc. ("SalonCentric"), seeking money damages in connection with injuries Mrs. Rice suffered at a SalonCentric store. ECF 5. SalonCentric has filed a Motion for Summary Judgment/ *Daubert* Motion to Exclude Testimony of Plaintiffs' Proposed Expert ("the Motion"). ECF 19. This Court has considered the Motion, along with Plaintiffs' Opposition, ECF 22, and SalonCentric's Reply, ECF 23. The issues have been fully briefed, and no hearing is necessary. *See* Local R. 105.6 (D. Md. 2018). For the reasons that follow, as to the *Daubert* issue, I will grant the Motion in part and deny it in part, and I will deny summary judgment.

## I. FACTUAL BACKGROUND

### A. Fact Witnesses

The basic facts surrounding this incident are undisputed. On November 17, 2015, Penny Rice entered the SalonCentric store in Frederick, Maryland, to shop for beauty products. ECF 19-1 at 5. As she removed a product from a shelf, the entire shelving unit fell on top of her, causing

her injury.[1] *See id.* at 6. The shelving unit was not anchored to the wall or floor at the time of the incident. *See* ECF 23 at 1 ("SalonCentric is not liable for the predecessor corporation's failure to bolt the shelving unit to the wall or floor.").

SalonCentric's parent company, L'Oréal USA S/D, Inc. ("L'Oréal"), had purchased the Frederick, Maryland store, along with fourteen other locations, from Columbia Beauty Supply, Inc. ("CBS") in 2008. ECF 19-2 (Sharnsky Aff.) ¶ 3. In the Purchase Agreement, CBS represented and warrantied that the "buildings, fixtures and improvements thereon (i) are in good operating condition without structural defects. . . and no condition exists requiring material repairs, alterations, or corrections, and (ii) are suitable and sufficient in all respects for their current uses." *See id.* ¶ 4. L'Oreal did not inspect the Frederick store prior to purchase, *Id.*

Melissa Blank has managed the Frederick store, for its various corporate owners, since 2001. ECF 19-3 (Blank Depo.) at 11:13-21. Blank described the shelving unit that fell on Mrs. Rice as a white peg-board gondola with attached shelves. *Id.* at 30:10-31:13. Blank testified that the same shelving unit had been in place since 2001. *Id.* at 34:4-35:8. Store employees regularly rearranged the shelves on the unit, which involved lifting the individual shelves out of the peg-board and replacing them in accordance with merchandise display plans sent by SalonCentric. *Id.* at 33:16-21; 37:6-15; 131:5-133:3, 136:9-137:14. Blank had never had any other customer injury take place in her store, and never personally inspected the shelving unit itself. *Id*. at 160:2-12, 160:16-21.

---

[1] The details of Mrs. Rice's interaction with the shelving unit, and whether any actions she took could constitute contributory negligence under Maryland law, are not at issue with respect to this Motion.

Two other store employees, in addition to Blank, testified that they routinely stocked and moved the shelves on the unit, and never detected any movement or instability. *See* ECF 19-4 at 62:15-20, 70:7-71:1; ECF 19-5 at 18:6-15.

**B. Expert Witnesses**

Plaintiffs retained Gregory Harrison, Ph.D., P.E. to provide expert testimony. Dr. Harrison submitted an expert report on January 18, 2019 and a supplemental report on June 25, 2019, and provided deposition testimony on May 16, 2019. ECF 19-8, ECF 19-9, ECF 19-10. Dr. Harrison reviewed materials submitted about the incident, and made an informal visit to the Frederick, Maryland store, with a friend, before writing his report. ECF 19-8 at 4-5. During that visit, Dr. Harrison did not disclose his identity to store management, and inspected a shelving unit he then believed to be the one that had injured Mrs. Rice, later learning that it was the wrong unit. ECF 19-9 at 33:17-34:6, 35:8-18, 35:19-36-12 (answering "correct" when asked if he believed it was the same unit that had fallen over). Dr. Harrison never inspected the actual unit that fell on Mrs. Rice. *Id.* at 14-19 (answering "No" when asked if he has requested to go back and inspect the unit that fell over). Essentially, Dr. Harrison opined that the failure to bolt the shelving unit to the wall at installation created an unsafe condition, and that SalonCentric breached its duty to inspect the unit regularly to ensure customer safety. ECF 19-8; ECF 19-10 at 2-3.

SalonCentric retained Garry Brock, Ph.D., to provide expert testimony on its behalf. Dr. Brock opined, in relevant part, that there would be no reason for SalonCentric to inspect the shelving unit, in the absence of any indication that it had been improperly installed. ECF 19-11 at 175:1-176:6. Dr. Brock testified that, in order to determine whether the shelving unit had been anchored to the wall, the entire shelving unit would have had to be disassembled. *Id.* at 197:2-9.

Dr. Brock agreed with Dr. Harrison that anchoring the unit to the wall would have prevented the accident. ECF 22-1 at 8–9; *see also* ECF 19-11. at 150:10-14; 151:1-152:11.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282,1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case

"necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III. ANALYSIS

### A. NEGLIGENCE STANDARD

In a diversity case, the federal court applies the choice of law rules of the forum state. *See Colgan Air, Inc. v. Raytheon Aircraft Co.,* 507 F.3d 270, 275 (4th Cir. 2007). In tort cases, Maryland applies the doctrine of *lex loci delecti,* and therefore uses the law of the site of the incident. *See, e.g., Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726 (2010). Accordingly, Maryland negligence law is applicable, because the shelving unit fell on Mrs. Rice in Frederick, Maryland.

"Under Maryland law negligence means doing something a person using reasonable care would not do, or not doing something a person using reasonable care would do." *Walker v. National RR Passenger Corp.,* 703 F. Supp. 2d 495, 502 (D. Md. 2010). A business invitor or storekeeper must therefore protect his invitees from any unreasonable risk about which the business invitor "knows or could have discovered in the exercise of reasonable care." *Tennant v. Shoppers Food Whse. Md. Corp.,* 115 Md. App. 381, 388 (1997). The burden rests with the "customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence." *Id.* at 389 (quoting *Lexington Market Auth. v. Zappala*, 233 Md. 444, 446 (1964)).

## B. *DAUBERT* MOTION

Initially, SalonCentric alleges that the testimony of Plaintiffs' expert, Dr. Harrison, should be excluded under *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). SalonCentric contends that Dr. Harrison's testimony does not rest on a reliable foundation, and that his methodology (including his in-person inspection of the wrong shelving unit) lacked sufficient reliability, such that this Court should exercise its gatekeeping function to exclude his testimony from the jury's consideration. ECF 19-1 at 11-18.

"The admissibility of expert testimony in a federal court sitting in diversity jurisdiction is controlled by federal law." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1054 (4th Cir. 1986). Under the Federal Rules of Evidence, a witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Expert testimony is admissible if it will assist the trier of fact, and: (1) is "based on sufficient facts or data;" (2) is "the product of reliable principles and methods;" and (3) the principles and methods have been applied "reliably ... to the facts of the case." *Id.* The expert testimony also must rest on a reliable foundation and must be relevant. *Daubert,* 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, (1999) (extending *Daubert* to "the testimony of ... other experts who are not scientists"). Where experiential expert testimony "does not rely on anything like a scientific method," it is nevertheless admissible "so long as an experiential witness 'explain[s] how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'" *United States v. Bynum*, 604 F.3d 161, 167 (4th Cir. 2010) (alterations in original) (citations omitted).

The Court's inquiry into the reliability of an expert's testimony is "flexible," and focuses on "the principles and methodology employed by the expert." *Daubert*, 509 U.S. at 594-95; *see*

*also Holesapple v. Barrett*, 5 F. App'x 177, 179 (4th Cir. 2001). In determining whether proffered testimony is sufficiently reliable, "the court has broad latitude to consider whatever factors bearing on validity the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Neither *Daubert* nor the Federal Rules of Evidence obligate a trial court "to admit opinion evidence that is [based merely on] the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Rather, "[r]eliability is to be determined by the 'principles and methodology' employed by the expert." *Holesapple*, 5 F. App'x at 179. Indeed, "[t]he Court must exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance to the jury." *Goyal v. Thermage, Inc.*, Civil No. WDQ-08-0020, 2011 WL 691185, at *3 n.8 (D. Md. Feb. 18, 2011) (quoting *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004)).

Initially, a more comprehensive review of Dr. Harrison's qualifications and conclusions in this case is useful. Dr. Harrison has a Ph.D. in Safety Engineering, and maintains professional engineering registrations in six states. ECF 19-8 at 1. He has more than fifty years of engineering experience. *Id.* He has engaged in expert investigations, and has provided testimony for both defendants and plaintiffs, in cases involving a wide variety of commercial display injuries. *Id.* at 3. At the time of his initial report, Dr. Harrison had not been provided with the name of the manufacturer that produced the relevant shelving unit. *Id.* at 5. He researched online to find shelving structures similar in shape and style, and contacted a manufacturer of a similar unit to inquire whether the unit could be placed against a wall without being affixed in some way. *Id.* Dr. Harrison opined that "a 14 inch small base wall shelf unit 6 feet tall, up against a wall and not secured at the top, would not be a stable shelving structure freestanding for many reasons to include whether or not the wall was plumb and the floor level or worse sloping down from the wall." *Id.*

Dr. Harrison averred that both the State of Maryland and Frederick County used the BOCA Building Code and the NFPA Life Safety Code (LSC) for technical data for the general safety of the public. *Id.* at 6. Moreover, in 2000, Maryland adopted the International Building Code [IBC] as its state-wide model building code. *Id.* Each building code requires aisles in the "Means of Egress" to be built and maintained safe and free of hazards at all times, with "structures" that are safe and able to handle the foreseeable and intended load. *Id.* According to Dr. Harrison, Mrs. Rice's incident, in the aisle of a store, was within a Means of Egress under the model building codes. *Id.* In his opinion, "A retail sales display must be one that is structurally stable and safe for use by the public in a manner that is foreseeable to include an adult or child climbing up onto the first shelving area, leaning up against it, and, also, falling onto or into the shelving unit." *Id.* He then issued fourteen separate "opinions" about the incident. *Id.* at 7-12. In relevant part, Opinion No. 5 states:

> No scientific testing of the fall incident site was performed since none was required for a forensic safety evaluation purpose because the subject matter is not one of "scientific research or wonderment" but, rather, an appreciation of the knowledge of a force diagram; force vectors; summation of forces and moments; and engineering statistics as taught in basic civil engineering and amplified in graduate school studies taken by the undersigned. The presence of the security video is also a most useful piece of evidence illustrating the subject display shelf unit overturning and further reduces the need to mock up the shelf unit loaded with cosmetic in an engineering test laboratory for a re-run.

*Id.* at 9.

At his deposition, Dr. Harrison acknowledged that the video alone is not clear enough to determine the cause of the accident. ECF 19-9 at 32:20-33:2. He acknowledged that an individual cannot tell just by looking at the shelving unit, whether it is anchored to the wall or not. *Id.* at 39:14-22. Dr. Harrison testified, "[i]t is reasonable to conclude that if you place force upon the shelf by pulling or pushing on it and it doesn't move, it's reasonable to conclude that it is

8

appropriately secured either bolted through the wall or bolted through the floor." *Id.* at 65:10-15. He testified that he did not need to observe the particular shelving unit in this case, because he has photographs with measurements in it. *Id.* at 77:8-78:1. He opined, "The main single issue in this case is the shelving unit is – with the 13-inch base – is an unsafe stable structure and that it wasn't attached to the wall." *Id.* at 79:10-14. During the course of his deposition, Dr. Harrison testified for the first time that SalonCentric should have conducted annual inspections to "see if their shelving units are in fact safe and secure," by pulling "gently to find out if there was an attachment to the wall." *Id.* at 120:3-17.

Following the deposition, on June 18, 2019, Dr. Harrison submitted a second written report. ECF 19-10. Between Dr. Harrison's deposition and his second report, Dr. Brock was deposed and identified the manufacturer of the shelving unit as Lozier. Dr. Harrison noted that Lozier's manual for the shelving unit in question "boldly warned of a 'general tip over hazard' *per se* … and required that the approximately 7 foot high gondola unit that was used in the Rice matter be either bolted or attached to the floor or to the wall in a structurally sound manner because of its small 13 inch base support." *Id.* at 2. Dr. Harrison noted that the IBC building code recognizes standards of care to include compliance with "manufacturer installation instructions and warnings." *Id.* Finally, Dr. Harrison opined that under the IBC, the LSC, "manufacturing specs and technical details for installation, and prevailing practices," "owners are responsible not only for ensuring the safety of their buildings, structures, and premises, but any and all structures installed within the inside of a building regardless of whether they were the original owners or installers of the building and its interior structures. This requires that the owner regularly inspect the premises to be aware of the condition of premises, including, especially, at the time of purchase." *Id.* at 3.

For the purposes of this Court's analysis, Dr. Harrison's opinions can be divided into two basic parts: the opinion set forth in his January 18, 2019 report explaining, essentially, that the shelving unit was unsafe because it was not anchored to the wall, and the opinion he rendered in his deposition and in his second report regarding the need for SalonCentric to conduct regular inspections to ascertain whether the shelving unit was properly anchored.[2] The two parts fare differently under application of the *Daubert* standard.

The first part of Dr. Harrison's proposed testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597. Dr. Harrison's opinion, that the structure and measurements of the shelving unit rendered it unstable when left freestanding against a wall rests on his extensive engineering background, basic engineering principles, the relevant building codes, and the manufacturer's installation instructions. ECF 19-8; ECF 19-10. Although Dr. Harrison did not inspect the shelving unit at issue, the opinions he rendered can be explained by reference to general engineering principles using the measurements of the unit in question. *See, e.g.*, *Maryland Cas. Co. v. Thermo-O-Disc, Inc.*, 137 F.3d 780, 785 (4th Cir. 1998) (finding district court did not abuse its discretion in admitting expert testimony when the expert applied principles of electrical engineering to the relevant conditions). The reliability of his testimony is additionally confirmed by the fact that Dr. Harrison's opinion, as to the instability of the unanchored shelving unit, accords with the opinion of the defense expert, Dr. Brock. ECF 22-11 at 147:5-6 ("[A]ccording to the manual, it should have been attached to the wall."); *id.* at 152:9-11 ("If they had been properly anchored, yes, the shelf probably wouldn't have fallen over."). While

---

[2] At deposition, Dr. Harrison suggested that the inspections should be conducted by gentle pulling on the shelving unit. ECF 19-9 at 120:3-17. In his second report, Dr. Harrison did not opine as to the particular method of inspection that would be appropriate. Testimony about the method of inspection falls within the "second part" of Dr. Harrison's opinion, as described above.

establishing the fact that the shelving unit should have been anchored to the wall is not determinative of SalonCentric's liability, it is relevant in that it helps "the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Accordingly, SalonCentric's motion will be denied to the extent it seeks to strike the opinions contained in Dr. Harrison's January 18, 2019 report.

The analysis is different, however, with respect to the second part of Dr. Harrison's proposed testimony, relating to SalonCentric's duty to inspect its shelving unit. This Court is unable to apply the *Daubert* factors to determine the reliability of Dr. Harrison's testimony, because he offered little explanation regarding the basis of his opinion. This Court must "ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Nease v. Ford Motor Co.,* 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Oglesby v. Gen. Motors Corp.,* 190 F.3d 244, 250 (4th Cir. 1999)). Dr. Harrison does not explain how his extensive engineering background renders him qualified to opine as to standard practices for inspecting shelving units in the retail industry. He cites to no written sources or codes containing standards for store inspections. His testimony about the required frequency of inspections shifted between his deposition, where he recommended "annual" inspections, ECF 19-9 at 120:6-17, and his second report, where he suggested that SalonCentric should "regularly inspect the premises . . . especially, at the time of purchase." ECF 19-10 at 3. As to the method of inspection, again, Dr. Harrison provided no scientific explanation for his view that "gentle pulling" would suffice to determine whether the shelving unit was properly anchored. ECF 19-9 at 120–21. Although an expert's inconsistencies can be addressed on cross-examination, courts will exclude testimony when these inconsistencies directly illustrate the unreliability of the underlying method. *See, e.g.*,

*Tyree v. Boston Scientific Corp.*, 2014 WL 5486694, at *9 (S.D. W.Va. Oct. 29, 2014). Dr. Harrison had not inspected the unit in question, and had no information about the shelves' contents or the overall weight. His technique, therefore, cannot and has not been tested, and is not subject to peer review. This Court cannot make a finding that his testimony regarding the need for, and the proposed method of, inspections is reliable, and that portion of Dr. Harrison's opinion is therefore subject to exclusion pursuant to this Court's gatekeeping function.

The exclusion of Dr. Harrison's testimony regarding inspections, however, is not fatal to Plaintiffs' claim, as explained below.

### C. SALONCENTRIC'S ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE HAZARDOUS CONDITION

Turning back to the standard for negligence, Plaintiffs contend that SalonCentric should be found to have actual or constructive knowledge of the hazardous condition of the unanchored shelving unit. Regarding actual knowledge, Plaintiffs argue that SalonCentric is responsible for the actions of its predecessor corporation, CBS. ECF 22-1 at 10-12. However, it is not evident, on the present record, that CBS even installed the shelving. Blank testified that the shelving has been there since she began work at the store in 2001, ECF 19-3 at 34:4-35:8, and there is nothing in the record demonstrating (1) when CBS acquired the Frederick store, or (2) under whose management the shelving unit in question was installed. Moreover, the law cited by Plaintiffs does not support a finding that SalonCentric should be held responsible for faulty installation by any predecessor entity. In the case Plaintiffs rely upon, *Smith v. Navistar*, 737 F. Supp. 1446 (D. Md. 1988), the Court declined to impose liability on a successor corporation, absent a specific contractual agreement to assume liability, because the predecessor corporation was "the alleged tortfeasor and was available to be sued." *See id.* In this case, as noted above, the record does not even establish that the *predecessor* corporation, CBS, is the alleged tortfeasor that installed the shelving unit.

Even so, although Plaintiffs have failed to demonstrate that SalonCentric had actual knowledge of a dangerous condition, Maryland courts also recognize liability for negligence on a theory of constructive knowledge. One of the cases Plaintiffs cite, *Anderson v. Home Depot USA, Inc.*, Civil No. GJH-14-2615, 2017 WL 2189508 (D. Md. May 16, 2017), attributes possible liability to Home Depot not on a theory of continued responsibility for the faulty installation of shelving by a prior owner, but on Home Depot's duty "to inspect its premises and maintain its premises in a reasonably safe condition. Similarly, in this case, the question that will be presented for the factfinder's consideration is whether SalonCentric breached its duty to inspect its premises and maintain its premises in a reasonably safe condition for customers. Multiple genuine factual questions exist with respect to this question, including assessing what SalonCentric could have observed without disassembling the entire shelving unit. *See* ECF 22-1 at 15–16 (disagreeing with SalonCentric's contention that the absence of bolts or fasteners could only be observed by disassembling the unit). Even absent any expert testimony establishing the contours of a shopkeeper's duty to inspect, the necessary conclusions can be drawn by lay jurors. *See Anderson,* at \*5 (quoting *United States v. Christian,* 673 F.3d 702, 710 (7th Cir. 2012) ("Expert testimony does not assist where the jury has no need for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic.")). A jury is capable of applying common sense and life experience to the question of the extent to which a reasonable store proprietor must inspect its premises to ensure customer safety, and specifically whether the proprietor must take steps to ensure that its shelving units are anchored to the wall. Given the material disputes of fact between the parties as to that question, summary judgment is inappropriate, and Plaintiffs' claims should proceed to trial.

## IV. CONCLUSION

For the reasons set forth above, SalonCentric's *Daubert* Motion to Exclude the Testimony of Dr. Harrison is DENIED as to his opinions that the shelving unit should have been anchored to the wall in order to prevent the accident, and GRANTED as to his opinions regarding SalonCentric's duty to conduct inspections, including the nature of the inspections it should have conducted. SalonCentric's Motion for Summary Judgment is DENIED.

A separate Order, including a date for a scheduling conference, is filed herewith.

Dated: January 3, 2020

                                            /s/
                                   Stephanie A. Gallagher
                                   United States District Judge